■ In the Matter of CARRIE HINES, Petitioner, v NEW YORK CITY HOUSING AUTHORITY et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent New York City Housing Authority, dated September 29, 1976, which, after a hearing, terminated petitioner's tenancy, *inter alia,* on the ground of nondesirability. Petition granted to the extent that the determination is modified, on the law, without costs or disbursements, by permitting the petitioner, her daughter Theresa, and her grandchildren, Eiline, Mona and Ikima, to continue as tenants, on condition that John Lewis and Anthony Givens do not return to reside with them. The petition is otherwise dismissed on the merits. The petitioner has commenced this article 78 proceeding to review the determination of the respondent New York City Housing Authority terminating her tenancy at the Langston Hughes Housing Project. Also subject to the determination are a daughter and three grandchildren who range in age from six months to four years. The determination was made after a hearing in which the petitioner appeared *pro se.* The record leaves no doubt that the petitioner possesses limited verbal and intellectual skills and that she did not fully comprehend the adversarial nature of the hearing. She was charged with nondesirability based upon the acts of her son, John Lewis, and Anthony Givens, who is the father of one of the petitioner's grandchildren. However, this grandchild, and the child's mother, do not live with the petitioner. There is no question that Lewis and Givens committed the alleged nondesirable acts. However, the hearing record does not establish by substantial evidence that Lewis and Givens concurrently reside with the petitioner. The issue of the residency of the adult persons who committed the nondesirable acts is crucial to the housing authority's determination. Such residency must be established not only at the time that

the nondesirable acts were committed, but also at the time of the hearing (cf. New York City Housing Authority Termination of Tenancy Procedures, § 6, par [d]). Although there is some equivocal circumstantial and hearsay evidence to the effect that Lewis and Givens may have resided with the petitioner in the past, such evidence was readily susceptible to a contrary interpretation and was certainly not so conclusive as to bind the petitioner (cf. *Matter of Edwards v Christian,* 61 AD2d 1045). No evidence at all was introduced to show continued residency. In contrast, the petitioner testified that neither Lewis nor Givens resided with her. This was supported by the testimony of an employee of the housing project who conceded that months before any of the subject occurrences the petitioner told her that Lewis had moved out of the apartment and now lived with the petitioner's nonresident daughter. The employee also confirmed that the petitioner had a letter from this daughter which stated that Lewis lived with the daughter. Since the evidence that Lewis and Givens actually resided with the petitioner was, at best, equivocal, any resulting presumptive inference of continued residency is of little persuasive value. In view of the absence of direct, competent evidence of current residency, coupled with the contrary evidence that the persons who committed the nondesirable acts do not currently reside with the petitioner, the housing authority's determination was not supported by substantial evidence. The unsubstantial nature of the evidence is particularly significant in light of the procedural one-sidedness of the hearing. Absent substantial evidence of occupancy, the nondesirable acts of the emancipated adults may not be imputed to the petitioner solely because of her relationship to them (see *Matter of Edwards v Christian, supra).* It would be shocking to one's sense of fairness to terminate the tenancy of persons who have not committed nondesirable acts and have not controlled those who have committed such acts *(Baldwin v New York City Housing Auth.,* 65 AD2d 546). Titone, J. P., Rabin, Gulotta and Cohalan, JJ., concur.