■ SHIRLEY JONES, on Behalf of Herself and All Other Persons Similarly Situated, et al., Appellants, v JOSEPH J. CHRISTIAN, Individually and as Chairman of the New York City Housing Authority, et al., Respondents.—Order of Supreme Court, New York County (Alvin F. Klein, J.), entered June 21, 1984, insofar as it converted a purported class action into a CPLR article 78 proceeding and transferred it to this court for disposition pursuant to CPLR 7804 (g), unanimously affirmed, without costs. The complaint, now deemed a petition, is unanimously granted to the extent of modifying the determination of the New York City Housing Authority, dated September 14, 1983, to provide that tenant Shirley Jones and her children (other than foster son Michael Holmes) shall remain eligible for continued occupancy only on condition that Holmes not reside there. We believe the purported class action was properly converted to an article 78 proceeding, and on that basis we have considered the merits.

The tenancy of Jones in the Morris Houses, a New York City Housing Authority project, was terminated for "nondesirability" by order of the Authority. That determination was founded upon a report of a hearing officer that in November 1981 Jones' foster son Holmes, who resided with her in the apartment, acting either alone or in concert with another, unlawfully possessed stolen property, including cartons of pickles and/or mayonnaise, on project grounds, and that he unlawfully possessed a key to the freezer belonging to the Hudson Senior Citizens Center. The key was denominated a burglar's tool and Holmes also was found to be unlawfully in possession of other stolen property, to wit, five blocks of cheese and a meat slicer.

The findings of the hearing officer as to these actions by Holmes are undisputed, as is the fact that at the time of these events he resided with Jones and with her other children, aged 6 to 19, in apartment 2G, 1309 Washington Avenue, Bronx. However, Jones testified that Holmes did not live with her at the time of the hearing. She claimed that in August 1982 Holmes moved to the residence of a friend, whose name she did not know, at 894 Rogers Place, Bronx. She also indicated that Holmes had enlisted in the New York Army National Guard. Copies of Holmes' enlistment papers, reflecting a mailing address of 894 Rogers Place, Bronx, were received and considered by the hearing officer.

However, Jones admitted that she regularly saw Holmes around the project, about once a week, when he came to the project's park. The hearing officer found that "Tenant habitually meets him outside the apartment at least once a week when he comes to play ball in the park. This tends to establish that even though his new residence at the Rogers Place address is to some extent confirmed by the mailing address given by him in connection with his enlistment, in fact, he has not been actually excluded from his mother's apartment in that he regularly returns to project premises to her knowledge and with her complicity." The hearing officer authorized counsel for the tenant to furnish additional data to support the contention that Holmes' military duty might be "certain to remove him from the scene of his prior depredations." No such data was furnished. On this basis, the hearing officer concluded: "This necessarily militates against a finding of mandatory exclusion and further suggests the lack of a factual basis for a discretionary finding that Michael may be excluded from the subject apartment as a basis of continuing the subject tenancy."

It is plain that there was lacking substantial evidence of occupancy by Holmes at the time of the hearing, although it is undisputed that he was an occupant at the time of the events complained of. In the absence of such evidence, nondesirable acts by an emancipated 21-year-old son should not be imputed to Jones solely because she has been his foster mother with whom he lived since the age of five, when his mother died.

Jones' testimony that Holmes has been excluded from her apartment is undisputed on the record, despite her contacts with him on the project grounds outside the apartment. Since it has not been shown that he was a resident of the apartment at the time of the hearing, the petition should be granted to the extent of reversing the determination so as to permit

plaintiff and her children, other than Holmes, to continue as tenants, on the condition that Holmes not return to reside in the apartment.

The hearing officer made no finding that he was a resident at the time of the hearing.

"It would be shocking to one's sense of fairness to terminate the tenancy of persons who have not committed nondesirable acts and have not controlled those who have committed such acts" *(Matter of Hines v New York City Hous. Auth.,* 67 AD2d 1000, 1001). *See, Matter of Edwards v Christian* (61 AD2d 1045, 1046, *affd* 46 NY2d 964), where it was noted: "The culpability of an emancipated nonresident adult may not be imputed to petitioner solely because of her maternal status".

There was no substantial evidence to sustain the determination that Holmes was still a resident of the apartment at the time of the hearing *(see, Matter of Knox v Christian,* 96 AD2d 490).

The order of Special Term converting the action into an article 78 proceeding and denying class action status was properly made for the reason stated at Special Term. A judicial determination involving governmental operations and policies binds the governmental agency to act accordingly in all similar situations *(see, Matter of Martin v Lavine,* 39 NY2d 72, 75; *Baumes v Lavine,* 38 NY2d 296, 305; *Matter of Jones v Berman,* 37 NY2d 42; *Matter of Leone v Blum,* 73 AD2d 252). Moreover, in essence the grievances here are not common. They rest on distinct factual patterns. Class actions are not appropriate where questions involving individual members of the putative class predominate as a matter of fact and law *(Kleinberg v Frankel,* 89 AD2d 556; *Friar v Vanguard Holding Corp.,* 78 AD2d 83). Thus, conversion to an article 78 proceeding was appropriate (CPLR 103 [c]; *Lenihan v City of New York,* 85 AD2d 562, *affd* 58 NY2d 679). Concur—Sandler, J. P., Carro, Fein, Milonas and Rosenberger, JJ.