Ms. Karen Burstein Ms. Marjory D. Fields Co-Chairs Governor's Commission on Domestic Violence
The Governor's Commission on Domestic Violence has raised three questions about the legality of certain alleged practices by landlords regarding battered women who apply, apart from their abuser, for rental housing. The questions are:
 (1) May a landlord or managing agent require an applicant for private or publicly-assisted housing to provide information about past, present or future marital status, including information, documentation or evidence about marital breakup or discord?
 (2) May a landlord or managing agent require an applicant for private or publicly-assisted housing to obtain a divorce as a condition to renting a housing accommodation?
 (3) May a landlord or managing agent deny housing to a battered woman seeking housing apart from her abuser on the presumption that the abuser will visit the housing accommodation and endanger the safety of the premises?
Inquiries into Marital Status
Section 296.2-a(c) of the Executive Law (Human Rights Law) provides that:
 "It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of publicly-assisted housing accommodations * * * [t]o cause to be made any written or oral inquiry or record concerning the * * * marital status of a person seeking to rent or lease any publicly-assisted housing accommodation".
Under this section, an owner or manager of "publicly-assisted housing" (as that phrase is defined in section 292.11 of the Executive Law) is prohibited from inquiring into the marital status of housing applicants. A landlord of publicly-assisted housing thus may not ask a prospective tenant whether she is married, divorced, separated, widowed or single. The section contains no exceptions. Accordingly, a publicly-assisted landlord may not inquire into the marital status of a prospective tenant even if the landlord has reason to believe that the prospective tenant has been subjected to domestic violence.
Owners and managers of private housing are subject to the same prohibition. They are barred from making any
 "record or inquiry * * * which expresses, directly or indirectly, any limitation, specification or discrimination as to * * * marital status, or any intent to make such limitation, specification or discrimination" (Executive Law, § 296.5[a][3]; emphasis added).
Thus, like publicly-assisted landlords, private landlords may not ask questions seeking information about a prospective tenant's marital status (New York State Division of Human Rights, Rulings on Inquiries, 3 CCH Employment Practices Guide, ¶ 26,050). Again, this is so whether or not the applicant has been subjected to domestic violence. A landlord may not circumvent the prohibition against asking about an applicant's present marital status by inquiring into her past or future marital status, or by asking about marital breakup or discord.
Requirement that an Applicant Obtain a Divorce
A requirement that a housing applicant obtain a final decree of divorce as a condition to renting private or publicly-assisted housing also violates the Human Rights Law.
First, enforcement of such a requirement necessarily entails an inquiry into the applicant's marital status. As discussed above, landlords of both private and publicly-assisted housing accommodations are prohibited from making such an inquiry (Executive Law, §§ 296.2-a[c], 296.5[a][3]).
Further, a requirement that an abused applicant obtain a divorce violates sections 296.2-a(a) and (b) and 296.5(a) (1) and (2) of the Human Rights Law because, as discussed below, it has a disproportionate impact upon women, and is not justified by any business necessity. These sections make it an unlawful discriminatory practice for any covered landlord to refuse to rent to a person, or to discriminate in the terms, conditions or privileges of a housing accommodation, because of the sex of the applicant or tenant.
A prima facie case of discimination under the Human Rights Law is established when a policy has the effect of discriminating against members of a protected class (People v New York City Transit Authority,59 N.Y.2d 343, 348-349 [1983]; Matter of Sontag v Bronstein, 33 N.Y.2d 197,201 [1973]; People v Eleven Cornwell Co., 695 F.2d 34, 44 [2d Cir, 1982]). See also, Betsey v Turtle Creek Associates, 736 F.2d 983, 987
[4th Cir, 1984] [Fair Housing Act, 42 U.S.C. § 3601, et seq.];Robinson v 12 Lofts Realty, Inc., 610 F.2d 1032, 1036-1037[2d Cir, 1979] [Fair Housing Act]; Williamsburg Fair Housing Committee v New York CityHousing Authority, 493 F. Supp. 1225 [SDNY, 1980] [Fair Housing Act]).
A policy requiring married applicants who were the subject of domestic violence to obtain a divorce has a disproportionate impact upon women. According to the United States Justice Department, 95% of all assaults on spouses or ex-spouses between 1973 and 1977 were committed by men (United States Department of Justice, Bureau of Justice Statistics, Reports tothe Nation on Crime and Justice, pp 21 and 22, Oct., 1983). One study of abuse between spouses found that "in 29 out of every 30 such cases, the husband stands accused of abusing his wife" (Leeds, Family Offense Casesin the Family Court System: A Statistical Description, Henry Street Settlement Urban Life Center [Nov., 1978, p ii], cited in Bruno v Codd,47 N.Y.2d 582, 586 n 2 [1979] and in Thurman v City of Torrington,595 F. Supp. 1521, 1528 n 1 [D Conn, 1984]). Accordingly, a policy that battered spouses obtain a divorce as a condition of eligibility for housing establishes a prima facie case of sex discrimination.
Once a policy is shown to have a disproportionate impact upon a protected class, the defendant must demonstrate a business necessity justifying the policy (People v New York City Transit Authority, 59 N.Y.2d at 349; Matterof Sontag v Bronstein, 33 N.Y.2d at 201; see also, Betsey v Turtle CreekAssociates, 736 F.2d at 988; Resident Advisory Board v Rizzo, 564 F.2d 126,149 [3d Cir, 1977]; United States v City of Black Jack, 508 F.2d 1179,1185 [5th Cir, 1974]). Cf., McKenna v Peekskill Housing Authority,647 F.2d 332 [2d Cir, 1981] [landlord must adopt the "least intrusive" means to ensure tenant safety where privacy and associational rights are involved]).
A rule barring all undivorced abused spouses is not dictated by business necessity as it does not appear to further significantly a landlord's legitimate objective of securing a safe environment for tenants. Thus, a requirement that an abused wife obtain a divorce would impact disproportionately on women without valid business justification. The requirement thus violates sections 296.2-a(a), (b) and (c) and 296.5(a)(1), (2) and (3) of the Human Rights Law.
Categorical Refusal to Rent to Victims of Domestic Violence
An across-the-board rule barring rentals to victims of domestic violence would also violate Executive Law, §§ 296.2-a(a) and (b) and 296.5(a)(1) and (2), as it too would have a disproportionate effect on women and is not justified by business necessity.
The vast majority of domestic violence victims are women. In 1983 approximately 70% of the petitioners seeking orders of protection in family offense proceedings in Family Court were wives seeking protection from their husbands. In only 7% of the cases were husbands seeking orders of protection from their wives (New York State Office of Court Administration, 1983 Annual Report, Family Offense Proceedings, January 1 to December 31, 1983).
The argument in support of an across-the-board ban on renting to victims of domestic violence is that notwithstanding any assurances she may give, a victim of domestic violence is likely to be a target of further abuse even after she moves into her own apartment, thereby endangering the building's tenants. A policy barring all former victims of domestic violence, however, would appear broader than necessary to further the landlord's legitimate goals.
In public housing eviction cases, both Federal and State courts have required that some causal connection be shown between the sanction of eviction and the tenant's conduct. Courts have thus held that tenants cannot be evicted soley because of the acts of the tenant's non-resident relatives (Tyson v New York City Housing Authority, 369 F. Supp. 513, 518
[SDNY, 1974], quoting from Scales v United States, 367 U.S. 203 [1961]). Accord, Knox v Christian, 96 A.D.2d 490 (1st Dept, 1983); Hines v N.Y.C.Housing Authority, 67 A.D.2d 1000 (2d Dept, 1979). Cf., Tyson v New YorkCity Housing Authority (plaintiff states a claim in alleging that eviction because of criminal acts of non-resident relatives violates constitutional rights).
By analogy, the violent conduct of a spouse or other party should not be conclusively attributed to a battered woman so as to prevent her from obtaining housing, A battered woman seeking housing apart from her abuser, with no intention of consenting to future cohabitation with him or of permitting him to enter the dwelling, may not be prevented from renting solely by reason of the violence previously displayed by a third party.
A landlord may adopt reasonable, non-discriminatory rules to protect against assaults upon tenants or damage to the landlord's property. However, a categorical exclusionary policy against battered women indiscriminately penalizes victims of domestic violence (and any children they may have), goes further than necessary to protect the landlord and other tenants and thus violates Executive Law, §§ 296.2-a(a) and (b) and 296.5(a)(1) and (2).