44

In the Matter of RACHEL BROWN, Petitioner, v EMANUEL POPOLIZIO, as Chairman of the New York City Housing Authority, et al., Respondents. (Appeal No. 41988.)

In the Matter of COZYELLA COE, Respondent, v EMANUEL POPOLIZIO, as Chairman of the New York City Housing Authority, et al., Appellants. (Appeal No. 41989.)

In the Matter of ROSE DICKERSON, Petitioner, v EMANUEL P. POPOLIZIO, as Chairman of the New York City Housing Authority, Respondent. (Appeal No. 41990.)

First Department, May 7, 1991

APPEARANCES OF COUNSEL

*Jillian S. Blanchard* of counsel *(Wayne G. Hawley,* attorney), for Rachel Brown and another, petitioners.

*Alfred E. Braun* for Rose Dickerson, petitioner.

*Harry Steinberg* of counsel *(Manuel H. Quintana,* attorney), for municipal respondents.

## OPINION OF THE COURT

ROSENBERGER, J.

The petitioners herein were served with notice of intent to terminate their tenancies in housing projects operated by respondent New York City Housing Authority (NYCHA), based on the purported acts of their emancipated sons which rendered their continued tenancies "non-desirable". According to the New York City Housing Authority Termination of Tenancy Procedures, "non-desirability" is defined as

"the conduct or behavior of the tenant or any person occupying the premises of the tenant which constitutes:

"(1) A danger to the health and safety of the tenant's neighbors.

"(2) Conduct on or in the vicinity of the Authority premises which is in the nature of a sex or morals offense.

"(3) A source of danger or a cause of damage to the employees, premises or property of the Authority.

"(4) A source of danger to the peaceful occupation of other tenants, or

"(5) A common law nuisance."

Following the completion of hearings in these matters, the Hearing Officers recommended, and respondent agreed, that petitioners' tenancies be terminated. We find the determinations in the *Brown* and *Dickerson* matters arbitrary and capricious, based on an error of law and that the penalties imposed constituted an abuse of discretion. With regard to the *Coe* case, the Hearing Officer abused his discretion in proceeding with the hearing under the circumstances presented, in denying petitioner's application for a de novo hearing, and in imposing the penalty of termination.

### *Appeal No. 41988*

By notice dated July 26, 1989, respondent NYCHA instituted a termination of tenancy proceeding against petitioner

Rachel Brown for nondesirability, based on the fact that her son, Derrick Mungin, had been arrested for possession of cocaine on the grounds of the Douglass Houses, a project where Ms. Brown and her family had resided for some 20 years.

At the hearing which commenced before Hearing Officer Stuart Laurence on October 26, 1989, Ms. Brown testified that she currently resided in the apartment in question with her minor twin daughters as well as her son Gary and his family. Her eight children and her grandchildren visit her almost every day. She further testified that her 25-year-old son Derrick had not lived with her for six months since he moved to New Jersey with a friend, his girlfriend and their child. However, he visited Ms. Brown frequently. While Ms. Brown stated that she was willing to prevent Mungin from residing in her home, she expressed her dissatisfaction with a ruling that would bar him from ever visiting her.

Derrick Mungin testified that he had been living in New Jersey for six months but continued to visit his mother, the rest of his family, and his friends at the project. He had never been arrested before the incident on January 22, 1989, for which he was charged with criminal possession of a controlled substance in the seventh degree, and to which he pleaded guilty to disorderly conduct. Although the officer who arrested Mungin testified at the hearing, Mungin disputed his version of the events and claimed that although he was not guilty, he pleaded guilty to the violation to avoid repeated court appearances, as he was responsible for the care of his child in New Jersey.

At the conclusion of the hearing, the Hearing Officer recommended terminating Ms. Brown's tenancy. Respondent adopted the recommendation and, on November 22, 1989, notified Ms. Brown that she was ineligible for continued occupancy on the ground of nondesirability and that her tenancy was terminated. She thereafter brought this CPLR article 78 proceeding challenging respondent's determination which the Supreme Court transferred to this court.

*Appeal No. 41989*

Cozyella Coe, a resident of the Douglass Houses for approximately seven years, was served with notice of termination based on nondesirability on July 21, 1989. Her 20-year-old son

Patrick had been arrested for unlawfully possessing cocaine on project grounds, with the intent to sell, on two separate occasions. After receiving the termination notice, Ms. Coe contacted MFY Legal Services, Inc. (MFY) to obtain the services of a lawyer to represent her at the hearing on the charge. Since MFY was understaffed, Ms. Coe did not appear with an attorney and the matter was adjourned.

The volunteer attorney from MFY eventually assigned to represent Ms. Coe was unable to prepare for the rescheduled hearing, however, due to her inexperience and her limited schedule. Counsel for respondent refused to consent to another adjournment and the matter proceeded to a hearing before Hearing Officer Stuart Laurence, despite the fact that MFY could not appear on Ms. Coe's behalf.

When asked by the Hearing Officer at the commencement of the hearing if she had a lawyer, Ms. Coe responded that she did not. When asked if she was prepared to represent herself, she also responded "no", and later added that she guessed she needed someone to represent her. She explained her attempts to acquire the services of an attorney through MFY, at which point counsel for respondent volunteered that his understanding was that MFY would not accept Ms. Coe's case because it was short-staffed. The Hearing Officer, while acknowledging that he could adjourn the hearing, instead ordered the matter to proceed because Ms. Coe could not tell him how she could get a lawyer to represent her.

At the hearing, the officers who arrested Ms. Coe's son testified to the circumstances leading to his arrest on drug charges. Ms. Coe neither objected to any of the testimony nor cross-examined the witnesses. Nor did she present any witnesses, testify on her own behalf, or present a closing argument. In fact, she remained virtually silent throughout the proceedings. The Hearing Officer's recommendation that her tenancy be terminated was adopted by respondent on November 15, 1989.

Ms. Coe and MFY thereafter wrote to respondent to request a new hearing but the application was dismissed. Ms. Coe then brought this article 78 proceeding to annul respondent's determination terminating her tenancy and to direct respondent to schedule a new hearing. In an order entered July 23, 1990, the Supreme Court annulled respondent's determination and remitted the matter for a de novo hearing. Respondent appeals.

*Appeal No. 41990*

By notice dated October 26, 1989, petitioner Rose Dickerson, a five-year resident of the Soundview Houses, was informed that a recommendation had been made to terminate her tenancy, based on nondesirability, because of the arrest, on September 5, 1988, of her 20-year-old son Dwayne for unlawfully possessing cocaine with the intent to sell, on project grounds.

At the hearing conducted before Hearing Officer Irving Sadur on December 29, 1989, Ms. Dickerson appeared *pro se,* as she apparently was beyond the income level entitling her to Legal Aid representation, and was unable to borrow enough money to obtain the services of private counsel. Respondent first introduced two affidavits of income dated April 10, 1989 and May 7, 1988 on which Ms. Dickerson listed her son Dwayne as a resident of her household and then the testimony of the police officer who arrested him. Evelyn Marshall, a housing assistant at Soundview Houses, testified that on November 2, 1989, Ms. Dickerson told her that her sons Dwayne and James would be leaving the apartment. Marshall told her to bring in a notarized letter to that effect, but Ms. Dickerson never returned.

Although Ms. Dickerson claimed that Dwayne had moved out of her apartment approximately one year before the hearing, she stated that she was unable to prove he was residing elsewhere because the owner of the house where he was living, Willis Wright, of Elizabeth, New Jersey, had a death in the family and would not be returning to his residence until the following week. She also stated that her son lived with a man named Al Davis at Wright's house. She explained that she had listed Dwayne as a member of her household on her April 10, 1989 affidavit of income, even though he was not residing with her at this time, because if something happened to her, she wanted him to be able to take care of her younger children at the apartment.

The Hearing Officer informed Ms. Dickerson that he would adjourn the matter to allow her to return with proof that Dwayne was permanently residing elsewhere. However, despite this assurance, he ordered the proceedings to continue and, in a decision dated January 8, 1990, recommended that Ms. Dickerson's tenancy be terminated. Respondent adopted the recommendation and notified her on January 31, 1990 that her tenancy was terminated. She then instituted this

article 78 proceeding which the Supreme Court transferred to this court.

In each of these cases, the crucial issue is the residency of the person committing the nondesirable act. With regard to the burden of proof at the hearing on the charges, paragraph 6 (d) of the New York City Housing Authority Termination of Tenancy Procedures provides: "If the charges brought against the tenant are based upon the Non-Desirable acts, conduct or behavior of a person (the 'Offender') other than the tenant, it is the Housing Authority's responsibility to prove that the offender occupied the premises at the time of the offense. However, even if the Housing Authority proves this, the tenant may still show that the offender has permanently moved out by the time of the hearing."

In addition, paragraph 6 (d) provides that the tenant may avoid the penalty of losing his or her apartment if: "(i) at the hearing on the charge(s), the tenant claims the offender has left the tenant's apartment permanently; and (ii) the tenant presents evidence to the Hearing Officer to support this claim."

This section further provides, that: "[e]vidence that the tenant presents in support of this claim (that either the offender did not occupy the apartment at the time of the offense or has since permanently moved out), such as a signed lease and/or rent receipts at another address, or a letter from Welfare or Social Security showing the offender's new address, shall be proof that the offender did not or does not occupy the tenant's apartment, except that the Authority may challenge this evidence before the Hearing Officer. Nothing contained in this paragraph 6 (d) is meant to limit the tenant's right to offer any evidence to the Hearing Officer that an offender is no longer occupying the tenant's apartment, including any spoken or written statement by the tenant or other persons."

The uncontroverted evidence at the hearing on Rachel Brown's tenancy established that her son Derrick Mungin vacated the premises, not only prior to the time of the hearing, but before the termination notice was served. Ms. Brown and Mungin testified that Mungin had been living in New Jersey for six months with a friend, his girlfriend and their child. They also introduced into evidence mail received by Mungin at his New Jersey address as well as a notarized letter from the person with whom Mungin was living.

Respondent has failed to establish that Mungin resided with

petitioner at the time of the hearing (New York City Housing Authority Termination of Tenancy Procedures para 6 [d]; *Matter of Hines v New York City Hous. Auth.,* 67 AD2d 1000). "In view of the absence of direct, competent evidence of current residency, coupled with the contrary evidence that the person[s] who committed the nondesirable act[s] do not currently reside with the petitioner, the housing authority's determination was not supported by substantial evidence. * * * Absent substantial evidence of occupancy, the nondesirable acts of the emancipated adults may not be imputed to the petitioner solely because of her relationship to them." *(Matter of Hines v New York City Hous. Auth., supra,* at 1001; *and see, Matter of Knox v Christian,* 96 AD2d 490; *Matter of Edwards v Christian,* 61 AD2d 1045, *affd* 46 NY2d 964.) Nor can the fact that petitioner was unwilling to bar all visitation with her son be an appropriate basis upon which to uphold respondent's determination *(Matter of Edwards v Christian, supra).* Such absolute exclusion is unreasonable and would impose an impossible burden on petitioner *(supra).*

Similarly, Rose Dickerson, who appeared *pro se,* testified that her emancipated son moved out of her home a year before the hearing, and provided the Hearing Officer with the name of the person with whom he was living as well as the name of the person who owned the building in which he resided. She further informed the Hearing Officer that she would be able to produce an affidavit if granted a short adjournment. Although the Hearing Officer at first indicated that he would adjourn the matter to allow petitioner to bring in proof to establish that her son was living elsewhere, he then asked counsel for respondent whether he would prefer that the matter be decided on the record or allow Ms. Dickerson the opportunity to submit further proof. Counsel for respondent stated that he opposed any further adjournments so the Hearing Officer rendered his decision without granting the adjournment.

■ While respondent offered affidavits of income in support of its contention that the son was still residing with petitioner, one affidavit was dated May 7, 1988, almost a year and a half before the date of the hearing and the second was dated April 10, 1989, eight months before the hearing. Both listed the son as a resident of petitioner's household. However, Ms. Dickerson explained that she listed him as a resident on the latter affidavit, even though he was then living elsewhere, so that he would be able to come in and care for her younger

children if something happened to her. Since the evidence of her son's continued residency in the apartment was equivocal *(Matter of Hines v New York City Hous. Auth., supra)*, and since petitioner, who was not represented by counsel, indicated that she could prove that her son resided elsewhere if she were granted a short adjournment, we grant the petition to the extent of remitting the matter to reopen the hearing to allow petitioner the opportunity to present such evidence in support of her claim.

█ The record fully supports the Supreme Court's conclusion that the Hearing Officer abused his discretion in proceeding with the hearing in the Cozyella Coe matter after she informed him that she did not understand the nature of the proceedings and that she wished to be represented by counsel. Particularly inappropriate was the conduct of counsel for respondent, upon whose unsolicited comments the Hearing Officer relied in proceeding with the hearing, instead of granting an adjournment.

Although the volunteer attorney for MFY asked counsel for respondent to consent to an adjournment because of her inability to prepare due to staffing problems at the agency, her inexperience and her limited time schedule, counsel refused. When the Hearing Officer asked petitioner if she had made an attempt to obtain the services of a lawyer after she told him that she needed someone to represent her, petitioner told him that she had spoken to the attorney from MFY who said "there wasn't very much she could do." At this point, counsel for respondent told the Hearing Officer that it was his understanding that MFY would not accept Ms. Coe's case because it was understaffed. This statement implied that petitioner's case was not strong enough to warrant the expenditure of MFY's limited staff. He said nothing about MFY indicating that it would represent Ms. Coe if granted an adjournment. This omission clearly led the Hearing Officer to believe that an adjournment for Ms. Coe to obtain counsel would be futile as demonstrated by his statement to her: "Since you don't have a lawyer, if you had a lawyer and there's good reason for [his] not being here, we could adjourn it, but since you have no lawyer, nor have you told me from where you would get a lawyer, I have to order these proceedings to continue."

While an indigent tenant does not have a constitutional right to assigned counsel *(see, Donaldson v State of New York,* 156 AD2d 290, 293, *lv dismissed in part, denied in part* 75

NY2d 1003), a private citizen may not be deprived of continued tenancy in a public housing project, without affording him or her adequate procedural safeguards *(Escalera v New York City Hous. Auth.,* 425 F2d 853, 861, *cert denied* 400 US 853, and cases cited therein). Due process requires an opportunity to confront and cross-examine adverse witnesses *(supra,* at 862).

Paragraph 5 of the New York City Housing Authority Termination of Tenancy Procedures directs the Hearing Officer to be "liberal in granting reasonable adjournments requested by the tenant * * * for good cause shown, to assure that there be no doubt that the tenant is afforded every due process right." As the Supreme Court found, although petitioner did not specifically request an adjournment, such request may be implied from her assertion that she needed a lawyer because she did not understand the nature of the proceedings.

The refusal of the Hearing Officer to accommodate petitioner by granting an adjournment so that she could obtain counsel, coupled with counsel for respondent's misrepresentation to the Hearing Officer, were tantamount to arbitrary and capricious behavior which effectively eviscerated petitioner's due process right to confront and cross-examine the opposing witnesses and to present evidence in support of her cause. Petitioner's intimidation by, and capitulation to, the proceedings are readily apparent from the record and rendered the hearing completely one-sided. "The minimum procedural requirements of due process under the Fourteenth Amendment must reflect the balance between the government's interest in efficient administration and the nature of the individual's interest being affected by governmental action" *(Escalera v New York City Hous. Auth., supra,* at 867).

In her letter to the Hearing Officer dated December 26, 1989, requesting the vacatur of his decision and a new hearing at which she could be represented by counsel, petitioner explained that her intimidation by the proceedings prevented her from adequately representing herself. She also stated that her son had entered a drug rehabilitation program and that she would be willing to exclude him permanently from her home. The Hearing Officer dismissed the application since he believed that he lacked the authority to entertain such application.

At the time of his arrest, Patrick was residing with Ms. Coe.

However, in her petition and in a sworn statement, Ms. Coe alleged that her son had moved out and was living with his cousin at a specified address. The cousin also submitted a sworn statement in which she alleged that Patrick had been living with her since February 1, 1990.

■ Based on these circumstances, the Supreme Court correctly concluded that the Hearing Officer abused his discretion in proceeding with the hearing and in failing to reopen the hearing as per Ms. Coe's request. The Hearing Officer should have adjourned the hearing. He also incorrectly assumed that he lacked the authority to reopen the hearing. A court has inherent power to set aside its judgments in the interests of justice (see, Ladd v Stevenson, 112 NY 325). This power is equally applicable to administrative tribunals (see, Matter of Evans v Monaghan, 306 NY 312).

### THE PENALTIES IMPOSED

■ Prior to serving notice of termination, paragraph 2 of the New York City Housing Authority Termination of Tenancy Procedures requires a project manager or his representative first to interview the tenant to discuss the problem which may lead to termination of tenancy, ascertain the facts, and, when appropriate, assist the tenant by securing outside help. Should intervention by the manager fail, or, if he or she believes that termination of tenancy is appropriate, paragraph 3 provides for the file to be turned over to the Tenancy Administrator for his or her review and appropriate action. If, after this review, the Tenancy Administrator finds a basis for termination, the file is to be referred to the legal department for the preparation of a notice of charges. We note that there is nothing in the records of these cases to demonstrate that these procedures were followed or that any intermediate action was taken prior to the filing of the termination of tenancy charges (see, Matter of Garner v Tuckahoe Hous. Auth., 81 AD2d 915). In each of these cases, respondent imposed the maximum penalties, termination of petitioners' tenancies. We find these penalties excessive and in violation of respondent's own rules and regulations.

Paragraph 10 of the New York City Housing Authority Termination of Tenancy Procedures provides:

"In the event that any charge is found to have been proven, the Hearing Officer may make any of the following dispositions:

"(a) Termination of tenancy;

"(b) Probation;

"(c) Eligible subject to permanent exclusion of one or more persons in the household;

"(d) Eligible;

"(e) Eligible with referral to Social Services."

Pursuant to paragraph 13, however, "[w]here the offender or offenders has (have) removed from the household, it is mandatory that the disposition be: 'eligible'; 'probation'; or 'eligible subject to permanent exclusion of one or more persons in the household.' " Termination of the tenancy is not authorized under such circumstance.

Respondent urges us to recognize the drug crisis' effect on housing developments in this city and the need to rid the drug "plague" by evicting tenants who use or sell drugs. While the adverse affects of drug use cannot be ignored, the growing number of homeless men and women is also a great concern. The punishment of terminating petitioners' tenancies under the circumstances presented was " ' "so disproportionate to the offense[s] * * * as to be shocking to one's sense of fairness" ' " (Matter of Pell v Board of Educ., 34 NY2d 222, 233; Matter of Milton v Christian, 99 AD2d 984, 985-986). Notably, the offenders are the emancipated sons of long-term tenants which tenants have not been accused of engaging in any wrongdoing (Matter of Barriera v Popolizio, 144 AD2d 251).

■ Rachel Brown has been a tenant for 20 years. Her son was charged with a misdemeanor and pleaded guilty to a violation. The evidence at the hearing established that he was no longer living in the apartment. Therefore, according to respondent's own guidelines, termination of petitioner's tenancy was an unauthorized penalty. (New York City Housing Authority Termination of Tenancy Procedures para 13.)

Respondent attempts to justify the imposition of the illegal penalty by stating that it had no choice but to adopt the Hearing Officer's recommendation of termination, because petitioner's testimony indicated that she was unwilling to bar her son from visiting her at the apartment, which made it clear that she would not abide by a less severe penalty. Respondent's imposition of the more exacting penalty, however, effectively punishes petitioner for conduct which has not and may never occur. Ms. Brown's testimony at the hearing cannot be viewed as an assertion that she will violate a lawful

order. In any event, respondent's assertion that the penalty of permanent exclusion is absolute and applies to any presence by the offender on project grounds is unreasonable, and its enforcement would impose an impossible burden on petitioner *(Matter of Edwards v Christian, supra; see also, Jones v Christian,* 120 AD2d 367).

Respondent's Management Manual provides that for misdemeanor nondesirable actions such as criminal possession of a controlled substance in the fourth degree (petitioner Brown's son was charged with the lesser offense of criminal possession of a controlled substance in the seventh degree and pleaded guilty to a violation), submission for termination is not mandated unless there are other factors of an undesirable nature in the tenant's record. Since the evidence established that petitioner's son was not living in the apartment at the time of the hearing, and since the drug charge against Derrick Mungin was the only complaint of any kind lodged against petitioner or her family during their 20-year tenancy, respondent's determination terminating her tenancy was arbitrary and capricious, contrary to law, and the penalty imposed constituted an abuse of discretion.

■ The above analysis is equally applicable to petitioners Cozyella Coe and Rose Dickerson, although their sons were charged with more serious drug-related offenses. Should they be able to substantiate their claims that their sons have permanently vacated the premises, however, termination will no longer be a viable penalty.

As stated previously, "[a]bsent substantial evidence of occupancy, the nondesirable acts of the emancipated adults may not be imputed to the petitioner[s] solely because of [their] relationship to them *(see, Matter of Edwards v Christian, supra)*" *(Matter of Hines v New York City Hous. Auth., supra,* at 1001). It would be shocking to one's sense of fairness to terminate the tenancies of persons who have not committed "nondesirable acts" and have not had control over those who have committed such acts *(Baldwin v New York City Hous. Auth.,* 65 AD2d 546; *and see, Jones v Christian, supra).*

Combatting the drug crisis infesting the city's housing projects is an important objective. It can, and should be, accomplished, however, without violating or disregarding the due process rights of the tenants.

Accordingly, in the CPLR article 78 proceeding, transferred to this court by order of the Supreme Court, New York

County (Leonard N. Cohen, J.), entered June 27, 1990, by which petitioner Rachel Brown seeks to annul a determination of respondent New York City Housing Authority dated November 22, 1989, which terminated her tenancy, the petition should be granted, respondent's determination is annulled, and the matter is remitted to respondent for imposition of a penalty consistent herewith, without costs.

Order and judgment (one paper) of the Supreme Court, New York County (Eve M. Preminger, J.), entered July 23, 1990, which granted petitioner Cozyella Coe's petition annulling respondent New York City Housing Authority's determination dated November 15, 1989 terminating her tenancy to the extent of remitting the matter for a de novo hearing should be affirmed, without costs.

In the CPLR article 78 proceeding, transferred to this court by order of the Supreme Court, New York County (Ira Gammerman, J.), entered July 19, 1990, by which petitioner Rose Dickerson seeks to annul a determination of respondent New York City Housing Authority dated January 31, 1990, which terminated her tenancy, the petition should be granted to the extent of remitting the matter for a de novo hearing, without costs.

SULLIVAN, J. P., MILONAS, WALLACH and SMITH, JJ., concur.

Determination of respondent New York City Housing Authority dated November 22, 1989, is annulled, and the matter is remitted to respondent for imposition of a penalty consistent with the opinion of this court entered herein, without costs.

Order and judgment (one paper), Supreme Court, New York County, entered July 23, 1990, affirmed, without costs.

Application seeking review of a determination of respondent New York City Housing Authority, dated January 31, 1990, granted to the extent of remitting the matter for a de novo hearing, without costs.