■ In the Matter of PHYLLIS FEATHERSTONE, Appellant, v RUBEN FRANCO, as Chair of New York City Housing Authority, Respondent. [703 NYS2d 11] —Order, Supreme Court, Bronx County (Gerald Esposito, J.), entered May 19, 1997, which denied the petition to annul respondent's determination to terminate petitioner's tenancy on the grounds of nondesirabil-

ity and breach of the Authority's rules and regulations, and dismissed the petition, vacated, the petition treated as one transferred to this Court for de novo review, and upon such review the challenged determination confirmed, the petition denied and the proceeding dismissed, without costs.

Since the petition raised an issue of substantial evidence, Supreme Court should have transferred the proceeding to this Court pursuant to CPLR 7804 (g). Upon our de novo review of the record, we find the determination to be based on substantial evidence, and that termination of petitioner's tenancy on the ground that her teenaged son, through his pattern of violent conduct, endangered the safety of others is not a penalty that shocks our sense of fairness (*see, Matter of Shaw v Franco*, 251 AD2d 156). The Hearing Officer properly concluded that petitioner would not abide by a lesser sanction, in light of her lack of credibility with respect to her son's behavior and her refusal to exclude her son from the subject apartment. In this regard, petitioner rejected an offer to remain in her apartment on condition she exclude her son. We note that we would reach the same result even if we were to consider circumstances that arose after the hearing. Concur—Williams, J. P., Saxe and Friedman, JJ.

Rubin, J., dissents in a memorandum as follows. Respondent Housing Authority was willing to allow petitioner to remain in her apartment on a probationary basis on condition that she find a home for her dog. However, the agency would not extend a similar courtesy to permit her to locate a home for her minor son, Jamar, instead directing her removal from the premises. Because the record suggests that the son, like the dog, is no longer living in petitioner's apartment, the agency's ruling is now a solution in search of a problem (*see, Matter of James v New York City Hous. Auth.*, 186 AD2d 498, 500).

The Housing Authority's justification for its April 26, 1995 ruling to force petitioner from her home was ostensibly to protect other tenants from the perceived harm represented by her then 18-year-old son (or her dog), not from any danger posed by petitioner herself (*Matter of Dickerson v Popolizio*, 168 AD2d 336, 337). While I appreciate that the agency's ruling is sustainable based upon the circumstances at the time it was rendered, in the present context it defies logic and, thus, is unsupportable. The incident of August 29, 1993, involving Jamar's menacing his mother with a knife, occurred when Jamar was just 16. Circumstances have undoubtedly changed in the ensuing six years, and review of the penalty imposed is warranted (*Matter of Cheek v Christian*, 67 AD2d 887, 888).

Jamar is now 22 years old, and petitioner is also entitled to reconsideration based upon the passage of time and her claim that her son has been rehabilitated (*Matter of Vargas v Franco*, 238 AD2d 274, 275 [considering "extensive evidence submitted since the hearing"]; *Matter of Feliciano v Christian*, 69 AD2d 796, 797), if indeed he still resides with her. Because public housing is a last resort for many of its residents, petitioner should not be deprived of a roof over her head for anything less than compelling reasons.

Accordingly, I would remand the matter to respondent for a hearing to determine if petitioner's son is still residing at the subject premises and, if so, whether he still constitutes a threat to the community and, if so, whether it would be appropriate to impose a mitigated sanction conditioned on his permanent preclusion from her apartment.