[709 NYS2d 523]

In the Matter of Ruth Holiday, Petitioner, v Ruben Franco, as Chair of the New York City Housing Authority, et al., Respondents.

First Department, June 6, 2000

## APPEARANCES OF COUNSEL

*Edward N. Simon* and *Lynn M. Kelly* of counsel (*MFY Legal Services, Inc.,* attorneys), for petitioner.

*Steven J. Rappaport* of counsel (*Sun Young Chun* on the brief; *Jeffrey Schanback, General Counsel,* New York City Housing Authority, attorneys), for respondents.

### OPINION OF THE COURT

RUBIN, J.

Petitioner was found ineligible for continuing residence in public housing on the ground that she violated a stipulation in which she agreed to permanently exclude her son, Stanley, from her apartment. Respondents determined that Stanley's presence in the apartment, on a single occasion and without petitioner's knowledge, during a period that petitioner's tenancy was subject to probation, warrants her expulsion from the premises.

The administrative proceedings against petitioner arose out of an incident of March 10, 1997. On that occasion, Stanley Holiday pounded on the door to petitioner's apartment, located at 825 Columbus Avenue, and demanded money to buy drugs. Petitioner, who had obtained numerous orders of protection against her son since 1989, called the police, who responded to the report of a domestic dispute in progress. The domestic incident report lists Stanley's address as 860 Columbus Avenue. The police report further notes that two doors to petitioner's apartment had been knocked off their hinges and that, at the time of his arrest for criminal mischief, Stanley Holiday was found to be in possession of crack cocaine. Petitioner subsequently went to the precinct house to press charges against her son and is listed as the victim on the arrest report.

On March 25, petitioner was interviewed by an employee of respondent Housing Authority concerning the incident. The interviewer's notes indicate that Stanley was arrested at the apartment, but police records do not specify the location where he was apprehended. Stanley subsequently pleaded guilty to criminal possession of a controlled substance in the seventh

degree (Penal Law § 220.03) in disposition of the charges against him.

On April 16, respondents issued a notice of charges alleging that Stanley, an "unauthorized occupant of [petitioner's] project apartment," unlawfully possessed a controlled substance on the premises. On the date scheduled for the hearing, petitioner entered into a stipulation providing that, *inter alia*, her tenancy would be subject to probation for a period of one year; that Stanley would be permanently prohibited from residence or visitation as a condition of petitioner's tenancy; that petitioner would be subject to unannounced inspections of the premises by representatives of respondent Housing Authority; and that any violation of the terms of the stipulation would be deemed a violation of the permanent exclusion condition. These terms were incorporated into a determination and order dated June 25, 1997, approved by respondents.

Following a subsequent inspection by investigators for the Housing Authority, petitioner was notified of a hearing into an alleged violation of the stipulation by notice dated October 14, 1997. At a hearing conducted on December 16, one of the investigators testified that he and a colleague had made a random inspection of petitioner's apartment on August 29, 1997. They were admitted at 12:20 P.M. by Freddy Holiday, another of petitioner's sons. Also present in the apartment were Lisa Ringer, petitioner's daughter, and Stanley Holiday, who was found on a bed in a bedroom, covered by a sheet. Freddy *Holiday* conceded that he knew Stanley was not supposed to be in the apartment, but added that Stanley had just been released from the hospital, that he was "sick" and had "a colostomy bag." Neither Freddy Holiday nor Lisa Ringer resides at the subject premises.

Petitioner, who was not represented by counsel, testified that she had been at work on the day of the unannounced inspection and had no knowledge of Stanley's presence in the apartment. She denied that, in the year since his colostomy was performed, Stanley had ever been at the apartment. She stated that she had given a key to her apartment to her daughter, Lisa, but not to her son, Freddy. Lisa testified that she had permitted entry to Stanley only because she was unaware of the order permanently excluding him from the premises.

The Hearing Officer found that the Housing Authority had sustained the charges and recommended that petitioner's tenancy be terminated. By determination dated January 7, 1998, respondent Housing Authority adopted the findings and

recommendations of the Hearing Officer and terminated petitioner's tenancy for "violation of permanent exclusion."

On appeal, petitioner contends that the Housing Authority's determination must be annulled on the ground that it is arbitrary and capricious, unsupported by substantial evidence, and based upon an unenforceable stipulation. In any event, she characterizes the resulting penalty as excessive and, consistent with recent decisions of this Court, argues that it should be annulled as "unduly harsh and disproportionate." She also seeks a judgment declaring that the procedures employed by the Housing Authority for terminating a tenancy are improper and fail to comport with the agency's Termination of Tenancy Procedures, especially insofar as they provide that the Hearing Officer "shall be an impartial disinterested attorney."

Petitioner asserts that the original proceeding arising out of the incident of March 10, 1997 was improperly brought and that the disposition violates procedural due process as delineated in Housing Authority procedures. She notes that her son, Stanley, was not a resident of her apartment at the time and notes that "it is the Housing Authority's responsibility to prove that the offender occupied the premises at the time of the offense" (Termination of Tenancy Procedures ¶ 6 [d]; *Matter of Brown v Popolizio*, 166 AD2d 44, 51).

Since Stanley Holiday had been listed by petitioner on her affidavit of household income for the period from October 1, 1995 through September 30, 1996, the charge of "nondesirability" states a colorable claim based upon damage to the premises that had been inflicted by an apparent occupant of petitioner's household. Furthermore, petitioner was duly advised of the right to counsel and elected to proceed without representation. Having failed to establish collusion, fraud, accident, mistake or any other equitable ground traditionally employed by the courts to vacate a stipulated settlement (*Matter of Frutiger*, 29 NY2d 143, 149-150), petitioner is bound by the agreement she signed.

That is not the end of the analysis because, however scrupulous respondents may have been in according petitioner procedural due process at the first hearing or at any subsequent stage of the proceedings, their actions, taken in the aggregate, are manifestly unfair. To begin with, the charges originally brought against petitioner relate not to her conduct, but to that of an emancipated nonresident of the subject apartment. Though the information available to respondents at the time of the incident arguably warranted further investigation, the rec-

ord establishes that petitioner was guilty of no misconduct that would justify subjecting her tenancy to a period of probation. Stanley Holiday was not on the premises by invitation on March 10, 1997 and had, quite literally, beaten down doors upon gaining entry. Whatever weight might be given to his inclusion on a list of household members during a previous year, it is evident that he did not reside in the apartment on the relevant date. 860 Columbus Avenue is stated to be Stanley Holiday's address on both the arrest report and on his appearance history (in which it is designated a "care of" address), while an order of protection obtained by petitioner in September 1997 lists his address as 107 W. 105th St. Imputation of Stanley's misconduct to petitioner requires substantial evidence of occupancy, not merely a familial relationship (*Matter of Stroman v Franco*, 253 AD2d 398, 399, *lv denied* 93 NY2d 817; *Matter of Brown v Popolizio, supra,* at 52; *Matter of Hines v New York City Hous. Auth.*, 67 AD2d 1000, 1001). In conclusion, the record does not support a finding that petitioner was guilty of any misconduct but, to the contrary, clearly establishes that petitioner was the victim of a criminal offense committed by her son.

The forfeiture of public housing accommodations is a drastic penalty because, for many of its residents, it constitutes a tenancy of last resort (*Matter of Featherstone v Franco*, 269 AD2d 109, 111 [dissenting mem]; *see also, Matter of Sanders v Franco*, 269 AD2d 118). This Court will therefore examine the circumstances of each case to ensure that the penalty is consonant with the offense for which it is imposed. In the instant matter, petitioner does not appear to have violated either the spirit or the letter of the stipulation. That petitioner's son may have been present in the apartment on a single occasion suggests, at most, that he was visiting the premises (*Matter of Hagan v Franco*, 272 AD2d 143 [excluded nonresident son admitted by sibling while petitioner was at work]; *cf., Matter of Blanco v Popolizio*, 190 AD2d 554). Moreover, with respect to the visit by an excluded individual, it is settled that a prohibition against visitation is unreasonable as it imposes an impossible duty on the petitioner (*Matter of Stroman v Franco, supra,* at 399; *Matter of Brown v Popolizio, supra,* at 52). The record in this matter is devoid of proof that Stanley Holiday was present in the apartment with petitioner's knowledge and consent, and respondents have therefore failed to establish a willful violation of the terms of the stipulation. At best, a visit by an excluded person without the knowledge of the tenant has

been regarded as a de minimis violation of a permanent exclusion condition (*Matter of Cardona v Franco*, 267 AD2d 53).

Given the drastic nature of the penalty imposed, even where substantial evidence has been adduced to support a finding that a permanent exclusion order has been violated, the forfeiture of tenancy will be annulled where it is so disproportionate to the offense as to comprise an abuse of discretion (*Matter of Hagan v Franco, supra*). Petitioner, who is in her late sixties, has resided in New York City Housing Authority premises since March 1957 and has occupied her present apartment since April 1977. Expulsion from her home is shocking to the conscience of the Court in view of the duration of petitioner's tenancy, her large household that includes a disabled daughter, her unblemished record as a tenant and the predicate for the alleged violation in the isolated actions of an emancipated child who not only resides elsewhere (*Matter of Williams v Franco*, 262 AD2d 45; *see also, Matter of Johnson v New York City Hous. Auth.*, 266 AD2d 102), but against whom petitioner has found it necessary to obtain multiple orders of protection.

Certain intemperate remarks made during the course of the hearing and the Hearing Officer's general attitude towards petitioner lend substance to her claim that the impartiality required by the Housing Authority's regulations may have been lacking. However, in view of this Court's disposition, it is unnecessary to reach petitioner's due process contentions (*Matter of Syquia v Board of Educ.*, 80 NY2d 531, 535; *Matter of Beach v Shanley*, 62 NY2d 241, 254).

Accordingly, the petition, brought pursuant to CPLR article 78, in this proceeding (transferred to this Court by order of the Supreme Court, New York County [Barbara Kapnick, J.], entered March 25, 1999) that challenged a determination, after hearing, of respondent New York City Housing Authority, dated January 7, 1998, terminating petitioner's tenancy upon a finding that she was ineligible for continued occupancy in public housing on the ground that she violated both probation and a stipulation of permanent exclusion, should be granted and the determination annulled, without costs.

Motion for reconsideration of denial of leave to file *amicus curiae* brief denied.

WILLIAMS, J. P., LERNER, SAXE and BUCKLEY, JJ., concur.

In this proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New

York County, entered March 25, 1999), the determination of respondent New York City Housing Authority, dated January 7, 1998, which terminated petitioner's tenancy, annulled, without costs, and the petition granted. Motion for reconsideration of denial of leave to file *amicus curiae* brief denied.