[721 NYS2d 17]

In the Matter of JULIA ROMERO, Petitioner, v JOHN G. MAR-
TINEZ, as Chair of the New York City Housing Authority,
et al., Respondents.

First Department, February 8, 2001

## APPEARANCES OF COUNSEL

*Karen Cacace* of counsel, New York City (*David W. Weschler* and *Jaya K. Madhavan* on the brief; *The Legal Aid Society,* attorney), for petitioner.

*Byron S. Menegakis* of counsel, New York City (*Steven J. Rappaport* on the brief; *Jeffrey Schanback, General Counsel,* New York City Housing Authority, attorney), for respondents.

## OPINION OF THE COURT

Saxe, J.

Petitioner, a tenant of a Federally funded public housing development, stipulated, following an assault by one of her sons against a fellow tenant, that the son would not be permitted to reside in or to visit her apartment. She now takes the position that the stipulation is unenforceable to the extent it prohibits any visitation. Despite earlier cases which include, in dicta, the sweeping assertion that a provision prohibiting visitation is unreasonable, we conclude that petitioner's stipulation is enforceable and that her conduct was properly found to constitute a violation of it. We further reject the contention that the penalty of termination of her tenancy rights is shocking or excessive.

### Facts

Petitioner has lived in the public housing development known as the Washington Houses, located at 1895 Second Avenue in Manhattan, for 23 years, where she raised her four children, Richard, Eladio, Jimmy and Judith. On January 9, 1995, petitioner's son, Jimmy, unlawfully entered another apartment at the development and assaulted the resident, causing physical injury. Respondent Housing Authority charged petitioner with nondesirability and breach of rules and regulations, and scheduled a termination of tenancy hearing.

Instead of proceeding with the hearing, petitioner chose to stipulate to exclude Jimmy from residing in or visiting the apartment as a condition of her continued eligibility for public housing. Pursuant to the stipulation dated August 7, 1996, the

Housing Authority adopted a Determination of Status for Continued Occupancy, placing petitioner's occupancy on probation for a period of one year conditioned on Jimmy's continued absence from the apartment.

The Housing Authority held four unscheduled visits by investigators, during which Jimmy was not found in the apartment. However, on November 17, 1997, at 10:30 A.M., two Housing Authority investigators went to the apartment and found a young man in bed. Although the young man identified himself as Eladio Romero, when asked his birthday, he responded, "July 14, 1967," which is the birthday of Jimmy Romero.

On the basis of this investigation, the Housing Authority brought new administrative charges against petitioner for violation of the permanent exclusion and sought termination of her tenancy. At the hearing, the investigator testified as to finding the young man in bed in petitioner's apartment and the man's response to being asked his birthday. In addition, the investigator testified that when he viewed a Police Department photograph of Jimmy the next day, he concluded that it was the same man as the one seen in petitioner's apartment the previous day.

Petitioner testified that Jimmy did not live in the apartment, but rather, in Huntington Station, Long Island. She did not remember Eladio's birthday but stated that he was seven years younger than Jimmy. Petitioner also produced a notarized statement from Eladio declaring that he was the person found by the investigators in the apartment and that he did not have a photo identification at the time. Petitioner's daughter Judith also testified that, on the date of the subject inspection, Jimmy was living in an apartment attached to her house in Huntington Station, New York. She also stated that Jimmy did not visit his mother in the apartment and that family gatherings took place in the Huntington Station house or the house of her brother Richard. Judith also identified a picture of Eladio.

The Hearing Officer issued a decision dated October 14, 1999 recommending termination of petitioner's tenancy. Although the Hearing Officer, when reviewing the photographs of the two brothers, noted that the pictures "very much invite[ ] the conclusion that one could be mistaken for the other" and further acknowledged that the "present record does permit the trier of fact to doubt whether the current record is substantial enough to support a finding [that the charge was sustained]," the Hearing Officer found that the failure of petitioner to pro-

duce either Eladio or Jimmy to testify prevented dismissal as it could be inferred that "their testimony would be destructive to her case." On November 3, 1999, the Housing Authority adopted the findings of the Hearing Officer and terminated petitioner's tenancy.

Petitioner commenced this CPLR article 78 proceeding, arguing that the decision to terminate her tenancy was not supported by substantial evidence that Jimmy was residing in the subject apartment, and that termination of the 23-year tenancy was disproportionate to the offense and constituted a gross abuse of discretion.

### Discussion—Substantial Evidence

Judicial review of an administrative determination is limited to a consideration of whether such determination is supported by substantial evidence (*see, Matter of Acosta v Wollett*, 55 NY2d 761, 763; *Matter of Pell.v Board of Educ.*, 34 NY2d 222, 230-232). Substantial evidence need not rise to the level of a preponderance of the evidence, but rather, is "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 180).

The investigators' testimony was sufficient to satisfy the Housing Authority's burden of proof. Specifically, it demonstrated that petitioner had knowingly permitted her son Jimmy to stay over and sleep at her apartment, a clear violation of the stipulation of exclusion. The remark of the Hearing Officer, that petitioner's failure to present the testimony of her sons "require[d] the inference that their testimony would be destructive to her case," did not improperly shift the burden of proof. Rather, it simply reflected the petitioner's consequent burden in opposition, "to come forward with evidence to the contrary" (*Matter of Jimenez v Popolizio*, 180 AD2d 590, 591), and the conclusion that her evidence did not satisfy that burden.

The conclusion that petitioner's evidence in opposition was insufficient was fully justified. Testimony and other evidence indicating that Jimmy maintained a residence elsewhere rather than in petitioner's apartment is insufficient, inasmuch as the claim was not that Jimmy was permanently residing in the apartment, but that he was knowingly permitted to stay in the apartment despite petitioner's agreement to exclude him. The only direct evidence to the contrary on that point was the notarized statement of Eladio, which by its nature was less compelling than in-person testimony, since it could not be

subject to cross-examination. The photograph of Eladio and the Hearing Officer's observation of the similarities in the photographs of the two brothers are of limited value at best.

### Stipulations of Exclusion Barring Visitation

According to petitioner, the stipulation is unenforceable to the extent that it purports to prohibit Jimmy from visiting petitioner, so that the proof that Jimmy was visiting petitioner is necessarily insufficient to demonstrate a violation of the stipulation. We reject petitioner's claim that a violation of the stipulation may only be established by the excluded person's taking up residence in the apartment, and conclude that the law does not support this position. The assertions in several cases that "no visitation" clauses are unreasonable (*see, e.g.,* *Matter of Holiday v Franco*, 268 AD2d 138, 142) must be understood both in the context of their facts as well as in a larger legal framework.

The initial case which discussed barring visitation by an offending family member involved a tenant who had agreed to a stipulation providing for a permanent exclusion of the offender, but not specifically barring visitation (*see, Matter of Edwards v Christian*, 61 AD2d 1045, *affd* 46 NY2d 964). The Court remarked that to absolutely forbid any presence of the offender on the project premises would unreasonably impose an impossible burden on the tenant, because the tenant could not be expected to physically prevent the offender from visiting the premises (*id.*). Then, in *Matter of Brown v Popolizio* (166 AD2d 44, 52), this Court held that a tenant's unwillingness to agree to a stipulation barring her son from visiting was not an appropriate basis for terminating her tenancy, since an absolute exclusion would impose an impossible burden on the tenant and would therefore be unreasonable.

More recently, in *Matter of Stroman v Franco* (253 AD2d 398, 399, *lv denied* 93 NY2d 817), a tenant was charged with permitting her excluded son to *reside* in her apartment in violation of a stipulation of exclusion. This Court held that evidence that she permitted occasional visits did not constitute substantial evidence of the charged violation, and then remarked, in dicta, that "no visitation" clauses in exclusion stipulations were unreasonable, citing *Matter of Brown v Popolizio (supra)*.

There *is some logic* to calling a prohibition against all visitation by the offending individual "an impossible burden" or "unreasonable." For instance, a tenant cannot possibly prevent an excluded family member from entering the development gener-

ally, or even from showing up at the apartment door; nor could she prevent the offending individual from being permitted entry by others when the tenant is not there. However, there is nothing either impossible or per se unreasonable about asking a tenant of public housing, in the interests of protecting her neighbors, to agree that a family member who is a proven danger to others not be permitted to reside in or visit the apartment.

To the extent inclusion of such a provision may be viewed as harsh, it is also reasonable. If a family member presents a threat to the tenant's neighbors when he resides there, he is no less of a threat when he comes to visit. While the tenant cannot be answerable for the conduct of her emancipated child, or for his decisions regarding where to go, she may be held responsible for her own decision to permit the miscreant to enter and stay in the apartment. Accordingly, although it may be unfair to construe such an exclusion agreement as violated by a visit which occurred without the tenant's knowledge, there is no practical or policy-based reason why the tenant should not be bound by the visitation exclusion under appropriate circumstances.

Notably, the Court has previously upheld enforcement of such stipulations. In *Matter of Johnson v New York City Hous. Auth.* (266 AD2d 102), we upheld the finding that the petitioner had violated the stipulation of exclusion by permitting the excluded family member to visit, although we remanded for a less harsh penalty in view of the tenant's circumstances. Similarly, in *Matter of Williams v Franco* (262 AD2d 45), this Court upheld a finding that the petitioner had violated a stipulation barring visits by excluded adult children even though the petitioner herself was not present in the apartment when the excluded family member was visiting; we merely remanded on the basis that there, too, the penalty was too harsh under the circumstances.

Moreover, unlike *Matter of Holiday v Franco* (268 AD2d 138, *supra*) and *Matter of Hagan v Franco* (272 AD2d 143), the showing here was not merely that the prohibited family member was present for a brief visit without the knowledge and consent of petitioner. The evidence permits the inference that Jimmy slept in petitioner's apartment the night before, with petitioner's knowledge and consent.

Ultimately, stipulations, like contracts generally, should not be set aside or modified absent a showing of fraud, collusion, mistake, or the like (*see, Hallock v State of New York*, 64 NY2d

224, 230). Indeed, individuals may waive even fundamental rights in the context of compromises and settlement of litigation (*see, Nishman v De Marco*, 76 AD2d 360, 367-371, *appeal dismissed* 53 NY2d 642; *Matter of Abramovich v Board of Educ.*, 46 NY2d 450, 455, *cert denied* 444 US 845). A stipulation entered into to resolve a proceeding to terminate a tenancy, in which the tenant agrees to prevent an offending family member from visiting her apartment, should be enforced, at least in the absence of circumstances requiring some different interpretation of the provision.

Accordingly, respondent's finding that petitioner violated the stipulation was proper in all respects and should be upheld.

### Penalty

We further reject petitioner's claim that the penalty was excessive. An administrative penalty may be set aside as a gross abuse of discretion if the punishment is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" (*Matter of Pell v Board of Educ., supra*, 34 NY2d, at 233 [internal quotations omitted]; *see, Matter of Featherstone v Franco*, 95 NY2d 550, 555). Here, however, the type of factors supporting a remand for a lesser penalty that were present in such cases as *Matter of Martinez v Franco* (272 AD2d 234), *Matter of Holiday v Franco* (268 AD2d 138, *supra*), *Matter of Johnson v New York City Hous. Auth.* (266 AD2d 102, *supra*) and *Matter of Williams v Franco* (262 AD2d 45, *supra*) are lacking. Petitioner is not caring for disabled children, foster children, or grandchildren; her four children are all grown. The fact that the visit of the offending family member took place with her knowledge and consent, and was apparently of substantial duration, also weighs against her.

Accordingly, the determination of respondent New York City Housing Authority, dated November 3, 1999, which terminated petitioner's tenancy in public housing on the ground of violation of probation, should be confirmed, the petition denied and the proceeding brought pursuant to CPLR article 78 dismissed, without costs.

SULLIVAN, P. J., ANDRIAS, WALLACH and FRIEDMAN, JJ., concur.

Determination of respondent New York City Housing Author-

ity, dated November 3, 1999, confirmed, the petition denied and the proceeding brought pursuant to CPLR article 78 dismissed, without costs.