OPINION OF THE COURT
Yvonne Lewis, J.
Pro se petitioner Noreen Ottley moves by order to show cause, for a judgment, pursuant to article 78 of the CPLR: (1) annul *705 ling and vacating the December 9, 2008 determination of respondent New York City Housing Authority (NYCHA), which terminated her tenancy in one of its public housing developments on grounds of nondesirability, and (2) declaring said decision arbitrary, capricious, and without rational basis in the record.
Facts and Procedural History
NYCHA is a public housing authority that provides and manages residential units such as the subject residence, the Breukelen Houses, located in Brooklyn, New York. Noreen Ottley was a tenant of apartment 3B (the apartment) at the Breukelen Houses. According to the resident lease agreement executed on March 29, 2001 (the resident lease agreement), Ms. Ottley was the sole lessee for the apartment and only authorized resident listed on her most recent affidavits of income.
On September 22, 2005, NYCHA charged petitioner with, among other things, nondesirability based on (a) her son’s unlawful possession of marijuana on NYCHA property and (b) filing false income information with NYCHA. Ms. Ottley and NYCHA chose to settle the charges by signing a stipulation of probation (the stipulation) on December 29, 2006. Under terms of the stipulation, petitioner agreed, inter alia, to subject her tenancy to a five-year probationary period commencing on January 17, 2007 and ending on January 16, 2012; and to permanently exclude her son, Derrick Washington, from residing in or visiting her at the apartment. If Ms. Ottley failed to adhere to the conditions under the stipulation, NYCHA would be entitled to seek to terminate her tenancy for violation of probation.
Although Ms. Ottley’s son was removed from the apartment, NYCHA did not remove him from the resident lease agreement, despite her request. In August 2006, petitioner was diagnosed with breast cancer. In March 2007, approximately three months after signing the stipulation, Ms. Ottley asked her son to return to the apartment and assist her with daily activities, such as moving around the apartment, shopping, and using the bathroom while she was undergoing chemotherapy treatment.
On March 30, 2007, the police executed a search warrant of the apartment. Upon searching the apartment, Detective Daniel Ticali arrested Ms. Ottley’s son and James Gaines, who were both found in Derrick’s bedroom. The police recovered three loaded and operable firearms, ammunition, two bags of marijuana, two digital scales, and drug paraphernalia from Derrick’s *706 bedroom; one baggie of marijuana from his pants and six baggies of marijuana from James Gaines; one large bag of marijuana in plain view on the living room table; and 140 baggies of marijuana from behind the sofa in the living room. During the search, Ms. Ottley was found in her bedroom in the apartment and she was arrested, along with Derrick and James.
After learning of the March 30th execution of the search warrant, NYCHA notified Ms. Ottley, via letter, that it was considering termination of her lease. NYCHA held an interview with petitioner to discuss the nondesirable conduct taking place. During the interview, Ms. Ottley admitted that her son was arrested and weapons were confiscated from her apartment, but said she did not know how the drugs and weapons came into the apartment.
On October 26, 2007, NYCHA sent petitioner a notice and specification of charges (the notice) charging her with nondesirability on the basis of her and/or her son’s illegal activities in the apartment; violation of the permanent exclusion in the stipulation by allowing her son to reside in the apartment; violation of the five-year probation in the stipulation; and breach of the resident lease agreement by permitting unauthorized occupants to reside in the apartment without prior written consent. The notice also advised Ms. Ottley of her hearing date and the fact that she was entitled to be represented by counsel or another representative of her choice.
On November 2, 2007, the police obtained and executed a second search warrant. Again, petitioner was found in her bedroom, and her son in his bedroom. Seven bags of marijuana, ammunition, and numerous empty ziplock bags were recovered from Derrick Washington’s bedroom, and both mother and son were again arrested. NYCHA then sent Ms. Ottley amended and/or supplemental charges and a notice of adjournment notifying her of the date of the hearing and supplementing the charges against her tenancy to include those stemming from the November 2, 2007 search of the apartment. The criminal case against petitioner based on her first arrest was adjourned to February 11, 2009 in contemplation of dismissal. The District Attorney declined to prosecute the charges against Ottley in relation to the November 2, 2007 arrest, as Derrick Washington accepted responsibility for all the illegal items found in the apartment.
At the NYCHA hearing, petitioner testified that she had asked NYCHA to remove her son from the lease because she “didn’t *707 actually want him anywhere near me,” but when she got sick she asked her son to return to the apartment because, due to her illness, she had “no choice but to have [her son] help [her around the house]” because she “couldn’t do things [herself].” She further testified that, although she knew the stipulation prohibited her son from living in or visiting her in the apartment, she thought it was acceptable for him to assist her there while she was recovering from breast cancer because his name had not been removed from the resident lease agreement. She claimed she was not aware of the illegal drug activity in the apartment because she was “always in bed.” She also averred that sometimes she did not even know when her son was in the apartment, and that he did not live in the apartment, but merely visited to help care for her.
In a decision dated December 9, 2008 (the NYCHA decision), NYCHA sustained the charges against petitioner. It reasoned that the probation agreed to in the stipulation with NYCHA was an insufficient deterrent, given that her son repeatedly sold cocaine from the apartment and possessed loaded firearms and substantial quantities of illegal narcotics and drug paraphernalia. The Hearing Officer found petitioner’s testimony that she was not aware of the illegal activities in the apartment not credible and determined that petitioner’s claim that she needed her son’s assistance while undergoing breast cancer treatment could not mitigate the disposition in this matter in light of her son’s nondesirable conduct and petitioner’s repeated violation of the permanent exclusion agreement in the stipulation. The NYCHA decision further noted that petitioner had dominion and control of the apartment, and therefore had an obligation to ensure that no members of the household or guests engaged in any illegal activities. On December 24, 2008, NYCHA sent petitioner a determination-of-status letter notifying her that the NYCHA Board had adopted the Hearing Officer’s decision declaring her ineligible for continued occupancy of the apartment and issued a determination terminating petitioner’s tenancy.
The Parties’ Contentions
In her motion, Ms. Ottley argues that NYCHA’s determination was unfair because while she was sick, due to her breast cancer and the side effects of her chemotherapy treatments, together with subsequent posttraumatic stress and depression, she was often incoherent and unaware of what was going on, including the criminal activity taking place in her apartment. *708 She avers that she spent the majority of her time sleeping in her bedroom and was often heavily medicated, which made her very weak and sleepy. With respect to her son’s presence in the apartment, she acknowledges that she asked him to come to the apartment to help her with her daily activities in the apartment, as there was much that she could not do for herself while she was weakened and medicated. She also claims and it is undisputed that NYCHA never removed her son from the lease and she, therefore, assumed he was still an authorized tenant. In addition, she relies on the dismissal of the criminal charges against her which arose from the March 30, 2007 search of her apartment and the District Attorney’s decision not to prosecute the criminal charges against her stemming from the November 2, 2007 search of the apartment as a basis for favorable relief. Ms. Ottley noted that her son had been out of the apartment for about a year when the hearing was held.
In her accompanying affidavit of emergency, Ms. Ottley additionally states that she did not have the physical or mental strength to deal with the termination of her tenancy. She avers that she does not have anywhere else to live, that her only income is her public assistance stipend of $100 monthly, and that she is already taking out loans to pay her bills. She further states that she has been trying to return to her job at the New York City Police Department, but still cannot work due to her disability.
In opposition, NYCHA maintains that its determination to terminate Ms. Ottley’s tenancy is in accord with its policies and procedures and applicable law, is consistent with rational policy to protect public housing residents, and is supported by substantial evidence of both illegal drugs and weapons in the apartment and Derrick Washington’s presence in the apartment in violation of the stipulation. NYCHA argues that Ms. Ottley’s claim that she was unaware of the illegal drug activity occurring inside the apartment is meritless because it is unlikely petitioner was unaware of such conduct, given that some drugs were found in plain view in her son’s bedroom, and because the execution of the first search warrant should have made petitioner more vigilant about illegal drug activity inside the apartment before the police executed the second search warrant. NYCHA also contends that Ms. Ottley’s violation of the stipulation by allowing her son in the apartment again is an adequate basis to terminate her tenancy in and of itself because requiring the permanent exclusion of those who engage in crim *709 inal behavior is rational and proportionate to the offense insofar as federal and state law requires NYCHA to provide a safe environment for its residents. NYCHA also argues that the decision was not unduly harsh, even in light of petitioner’s health problems, because she did not make any showing that they constituted a disability and did not ask for an accommodation. Furthermore, NYCHA asserts the dismissal of the first criminal cases and the failure to prosecute the second arrest against Ms. Ottley have no impact on this civil action.
Discussion
Under CPLR 7803 (3), the relevant question is “whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.” Judicial review of an administrative determination brought by an article 78 proceeding is “limited to the evaluation of whether that administrative determination is consistent with lawful procedures, whether it is arbitrary or capricious, and whether it is a reasonable exercise of the agency’s discretion” (Matter of Matos v Hernandez, 10 Misc 3d 1068[A], 2005 NY Slip Op 52188[U], *2-3 [2005], citing Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974]). Thus, in an article 78 proceeding, an administrative action “must be upheld unless it ‘shocks the judicial conscience and, therefore, constitutes an abuse of discretion as a matter of law’ ” (Matter of Mayes v Hernandez, 17 Misc 3d 1140[A], 2007 NY Slip Op 52351[U], *4 [2007], quoting Matter of Featherstone v Franco, 95 NY2d 550, 554 [2000]).
The court acknowledges the fact that NYCHA was technically entitled to terminate the tenancy for a violation of any of the stipulation’s conditions, including Ms. Ottley’s allowing of her son into the apartment, and terminations of tenancies for violations of such permanent exclusion clauses in public housing stipulations have been consistently upheld by courts (see e.g. Matter of Kilafofski v Blackburne, 201 AD2d 564 [1994], citing Matter of Serrano v Popolizio, 183 AD2d 430 [1992]; Matter of Jimenez v Popolizio, 180 AD2d 590 [1992]; see also Matter of Gilmore v Hernandez, 40 AD3d 410, 412 [2007], citing Matter of Romero v Martinez, 280 AD2d 58 [2001]). Furthermore, the undisputed terms of the resident lease agreement provide that *710 NYCHA may terminate a tenancy for nondesirability based on the conduct of either the tenant or a person occupying the premises of the tenant. Such prohibited conduct includes the sale of drugs, either in the apartment itself or elsewhere on or in the vicinity of the NYCHA premises (Matter of Blanco v Popolizio, 190 AD2d 554 [1993]; Matter of Brown v Popolizio, 166 AD2d 44 [1991]), and thus Derrick Washington’s engagement in drug-related activities while in the apartment could clearly be grounds for terminating petitioner’s tenancy under legal precedent.
The determination that petitioner’s and/or her son’s misconduct might have warranted termination of petitioner’s tenancy may have been supported by substantial evidence (see Matter of Gill v Hernandez, 22 Misc 3d 390, 394 [2008] [“A rational or reasonable basis for the agency’s determination exists if there is evidence in the record to support its conclusion”], citing Sewell v New York, 182 AD2d 469, 473 [1992]; see also CPLR 7803 [4]).
Notwithstanding the above, the court concludes that the penalty of termination is “so disproportionate to the offense, in light of all the circumstances, as to be shocking to one’s sense of fairness,” thus constituting an abuse of discretion as a matter of law (Matter of Pell, 34 NY2d at 233). Under the circumstances, including the fact that petitioner had never been arrested for or convicted of any prior crimes, and that petitioner was undisputedly ill and unable to care for herself during the period when her son returned to her apartment, the court finds that neither the Hearing Officer nor respondent gave sufficient weight to those mitigating factors (see Matter of Goudy v Schaffer, 24 AD3d 764 [2005]; Matter of Muraik v Landi, 19 AD3d 697 [2005]). Most notably, the court deems petitioner’s statements regarding her breast cancer relevant to the inquiry of whether the penalty of termination is appropriate. It does not appear that any consideration was given to Ms. Ottley’s medical condition during the relevant time period. Ms. Ottley testified that she was often bedridden, heavily medicated, incoherent, and unaware of what was going on during her treatment and recovery, and that, even though she had previously insisted on removal of her son from the apartment and the resident lease agreement, she asked her son to help her temporarily, in the face of her diagnosis of breast cancer, the ensuing medication and her inability to take care of herself. In light of her urgent need for assistance in her own home, and in the absence of others who could help or the funds necessary to hire such assis *711 tance, her actions might be considered to be reasonable. The court notes that the NYCHA decision articulates that Ms. Ottley had dominion and control of the apartment, and therefore had an obligation to ensure that no members of the household or guests engaged in any illegal activities. But the decision makes no reference to how it was determined that Ms. Ottley could have maintained herself in the apartment without help, nor how it was determined, in her weakened, cancerous and medicated state, that she had dominion and control over the apartment. It does not appear that the Hearing Officer considered any of the circumstances shown by the petitioner for consideration of a lesser penalty than termination.
In light of the failure of NYCHA to consider petitioner’s medical condition and its impact upon her ability to control the environment, her very limited income, her inability to return to work until she has made further recovery, and her lack of alternate housing options, the court concludes that it was arbitrary and capricious for NYCHA to impose a penalty of termination.
Accordingly, the petition to reverse and annul respondent’s December 24, 2008 administrative decision terminating petitioner’s tenancy is granted and the matter is remitted to respondent NYCHA for the imposition of a penalty more appropriate in light of all the circumstances — breast cancer and its attendant limitations — of which the petitioner had no control and no ability to abate.