(August 25, 2011)

■ In the Matter of JACQUELINE PEREZ, Appellant, v JOHN B. RHEA, as Chairman of the New York City Housing Authority, Respondent. [928 NYS2d 688]—

Where petitioner, a model tenant, has faithfully abided by an agreement with NYCHA to make full restitution of her rent underpayments, the decision to terminate her tenancy constituted a disproportionate penalty that would likely leave petitioner, the single mother of three children who also reside in the apartment, two of whom have diagnosed disabilities, homeless.

Petitioner Jacqueline Perez, 37 years of age, has lived in NYCHA housing for virtually her entire life and in the subject apartment for more than 17 years.

Petitioner alleged that in 2006, NYCHA sent a fax to petitioner's employer seeking verification of employment. Immediately thereafter, petitioner alleged that she and an assistant housing manager, Mr. Emmeric, had a conversation wherein petitioner admitted that she had mistakenly underreported her income. Petitioner alleged that Emmeric requested petitioner's presence at an informal meeting and informed her to bring copies of her pay stubs. Petitioner was not told to bring an attorney and was not informed that the meeting might result in commencement of termination of tenancy proceedings, even though, she asserts, the NYCHA manual provides that if "the Housing Manager believes that termination proceedings should be initiated against a tenant, first Call-In Letter, Form 040.185 shall be used to call the tenant to the office for an interview," and that at the interview, "the tenant may be accompanied by someone, such as an attorney, to assist him/her."

Emmeric and Ms. Reid, another assistant housing manager, attended the meeting on behalf of NYCHA. Petitioner alleges that Emmeric and Reid reached an agreement with her wherein petitioner agreed to make NYCHA whole by paying a prorated increased amount of rent each month. NYCHA maintains that there is no evidence that such an "unwritten agreement" was reached. Nonetheless, following the meeting, petitioner alleges that she began paying a prorated increased amount of rent each month.

By letter dated July 6, 2006, Chief Investigator Christopher A. France requested that petitioner appear for an interview regarding her tenancy. At the meeting, petitioner once again admitted that she had underreported her income and offered to make full restitution. Petitioner was never informed that her tenancy was in jeopardy of being terminated.

By letter dated November 29, 2006, petitioner was informed that criminal charges were being brought against her due to the underreporting of her income. Petitioner subsequently pleaded guilty to petit larceny, a class A misdemeanor. She was given a conditional discharge so long as she abided by the terms of a stipulation entered into among petitioner, the Assistant District Attorney, and NYCHA, wherein petitioner agreed to pay NYCHA the sum of $300 per month until the indebtedness was repaid. Petitioner, once again, was never informed that her tenancy might be terminated.

From July 2007 through the present, petitioner has fully complied with the repayment schedule set forth in the stipulation, and NYCHA does not claim otherwise. Nonetheless, on November 24, 2008, long after petitioner had commenced repay-

ments, petitioner was notified that her tenancy was in danger of being terminated. The charges included non-desirability, misrepresentation, non-verifiable income and breach of rules and regulations in connection with the underreporting of income from 1999 to 2005.

At the hearing, NYCHA's chief investigator, Christopher A. France, conceded that petitioner had made arrangements to make full restitution of any outstanding monies owed NYCHA and did not dispute that petitioner was current with her restitution payments.

Petitioner admitted that she had mistakenly underreported her income to NYCHA, but maintained that she had never intended to defraud NYCHA. She testified that she had never missed a restitution payment and had, as of the time of the hearing, repaid half of the indebtedness. She lived in the subject apartment with three children, one of whom is 17 years old and suffers from dyslexia and learning disabilities, and another who is seven years old and has attention deficit disorder, learning disabilities and emotional problems.

Petitioner, who is employed as an assistant bookkeeper, testified that she did not earn enough to afford non-NYCHA housing and faced homelessness in the event of eviction.

The hearing officer sustained the charges and recommended termination of petitioner's tenancy, finding petitioner's testimony about "[t]he plight of the family, especially with a disabled child," to be "an insufficiently mitigating circumstance." NYCHA approved the decision and disposition finding petitioner tenant ineligible for continued occupancy and terminated her tenancy.

Petitioner thereafter brought this article 78 proceeding, alleging that NYCHA's decision to terminate her tenancy was in violation of NYCHA's own mandated procedures and constituted a penalty so disproportionate to the offense as to be shocking to the conscience.

We find that termination of petitioner's tenancy was "so disproportionate to the offense," underpayment of rent, "in the light of all the circumstances, as to be shocking to one's sense of fairness" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974]).

Petitioner is a long-time resident of NYCHA housing with an otherwise unblemished record. She has already repaid over

$10,0000 of the amount owed and in a few years restitution will be complete.*

We have stated that "[t]he forfeiture of public housing accommodations is a drastic penalty because, for many of its residents, it constitutes a tenancy of last resort" (*Matter of Holiday v Franco*, 268 AD2d 138, 142 [2000] [citations omitted]). We have also found that where the circumstances underlying the charges against a tenant no longer exist, eviction of the tenant constitutes a disproportionate penalty (*see Matter of James v New York City Hous. Auth.*, 186 AD2d 498 [1992] [termination of tenancy for undesirability based on one incident where petitioner set a fire in the subject apartment "shocked the conscience" where petitioner had since entered counseling and was taking medication and there was no indication that she had returned to alcohol or abuse of illicit substances]).

Supreme Court found that termination of petitioner's tenancy was not an excessive penalty since she had concealed income. However, even if one classifies petitioner's offense as an intentional misrepresentation, evicting a tenant and her family may nonetheless constitute an unjustifiable penalty in light of the mitigating circumstances. The very case relied on by the Supreme Court, *Matter of Davis v New York City Dept. of Hous. Preserv. & Dev.* (58 AD3d 418 [2009]), stands for this proposition. This Court found that termination of tenancy was "shockingly disproportionate to the offense," stating: "[The agency's] finding that petitioner intentionally failed to disclose her son's SSI benefits is supported by substantial evidence and has a rational basis in the record. The penalty of termination of the rent subsidy is shockingly disproportionate to the offense, however, since it will likely lead to homelessness for petitioner, a 25-year tenant, and the three minor children who live with her, one of whom is disabled" (*id.* at 419 [citations omitted]).

This is not an isolated holding. In *Matter of Gray v Donovan* (58 AD3d 488 [2009]), we found termination of the petitioner's housing subsidy to be "shockingly disproportionate to the offense," notwithstanding her failure to report income earned by two adult children, where the petitioner had lived in the building for more than 30 years, had no record of any prior offenses, and the record indicated that termination of the subsidy would

---

* NYCHA maintains that termination of petitioner's tenancy does not shock the conscience because petitioner did not agree to pay restitution "voluntarily," but rather, as part of a plea agreement pursuant to which the charges against her were reduced. We disagree. In any event, petitioner alleges that she reached a verbal agreement to repay NYCHA when first informed that she had underreported her income, prior to the entry of the formal stipulation.

likely lead to homelessness for the petitioner and her 13-year-old son.

In *Matter of Williams v Donovan* (60 AD3d 594 [2009]), we vacated the penalty of termination of a housing subsidy and remitted for imposition of a lesser penalty, in spite of the fact that the tenant had failed to report income earned by an adult son, where the petitioner had resided in the apartment for 28 years and had an unblemished tenancy.

In *Matter of Vazquez v New York City Hous. Auth. (Robert Fulton Houses)* (57 AD3d 360 [2008]), we vacated the penalty of termination where the tenant, who was chronically delinquent in rent payments and had been charged with unauthorized use of an ATM card, made restitution of the amounts due to the complainant, had no prior criminal record, and cared for a family member with disabilities.

Like the tenants in the cited cases, petitioner has admitted to underreporting income and has made every effort to cure the violation by making restitution. Termination of her tenancy would have severe consequences not only for petitioner but for the children she supports, two of whom have disabilities. Since the penalty is "shockingly disproportionate to the offense," we vacate the penalty and remit for imposition of a lesser penalty. Concur—Andrias, Saxe, Freedman and Manzanet-Daniels, JJ.

Tom, J.P., dissents in a memorandum as follows: Following an investigation by the Inspector General, petitioner, a tenant in New York City Housing Authority (NYCHA) public housing, was found to have concealed employment income, thereby depriving the NYCHA of $27,144 in rent. She was arrested on charges of grand larceny in the third degree and offering a false instrument for filing in the third degree. On July 25, 2008, she entered a negotiated plea of guilty to the crime of petit larceny in full satisfaction of the charges against her, receiving a conditional discharge in return for restitution in the amount of $20,000, to be paid in monthly installments.

In related administrative proceedings, NYCHA terminated petitioner's tenancy upon findings that she provided no explanation for failing to report her earned income to the NYCHA over a period of six years and that she had intentionally defrauded the agency. The Hearing Officer concluded that the learning disabilities of her sons, ages 7 and 17, were insufficient mitigating factors and that termination was the appropriate disposition. This CPLR article 78 proceeding ensued, culminating in Supreme Court's dismissal of the petition.

Stripped of its verbiage, the majority's rationale is that petitioner's tenancy should not be terminated because it might

render her homeless. Granted, this Court has observed that public housing is a last resort (*see Matter of Holiday v Franco*, 268 AD2d 138, 142 [2000]), but universal application of the principle would result in no tenant of public housing ever being evicted, whatever the grounds. The appropriate standard of review is whether the administrative penalty constitutes an abuse of discretion (CPLR 7803 [3]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 232-234 [1974]), and if the sanction imposed does not shock the judicial conscience, it must be sustained (*Matter of Featherstone v Franco*, 95 NY2d 550, 554 [2000]).

Here, petitioner was found to have intentionally defrauded the NYCHA over a six-year period. In accordance with her plea agreement, petitioner was required to repay only $20,000 of the more than $27,000 in rent that she avoided paying, which amounts to no penalty at all. If defrauding a governmental agency incurs no adverse consequence, others will be encouraged to engage in similar fraudulent conduct—hardly an outcome that promotes the ends of justice. Furthermore, the attention deficit hyperactivity disorder, dyslexia and unspecified emotional problems that affect her children are not such severe disabling conditions as to render forfeiture of public housing accommodations a wholly disproportionate penalty.

As to the cases relied upon by the majority, in *Matter of Davis v New York City Dept. of Hous. Preserv. & Dev.* (58 AD3d 418, 419 [2009]), this Court considered the failure to report income to be both inadvertent and immaterial, noting, "[P]etitioner's omission of her son's income had no effect on the amount of rent subsidy she received." Likewise, in *Matter of Gray v Donovan* (58 AD3d 488, 488 [2009]), we stated, "[T]here is no indication . . . of the impact that petitioner's failure to report her adult children's income had, if any, on the amount of her housing subsidy." Similarly, in *Matter of Williams v Donovan* (60 AD3d 594, 595 [2009]), we indicated that the record did not reflect "the precise amount of excess subsidy received by petitioner, if any," remanding the matter to the agency for calculation and imposition of a lesser penalty.

More to the point is *Matter of Smith v New York City Hous. Auth.* (40 AD3d 235 [2007], *lv denied* 9 NY3d 816 [2007]), in which we upheld the termination of the petitioner's tenancy. The unauthorized occupancy of the apartment by petitioner's husband had the effect of concealing his income from the agency, "thereby producing a substantially lower rent" (*id.* at 235). While acknowledging the long duration of her tenancy and the

hardship to the tenant and her 15-year-old son, we concluded, "[W]e do not find that the penalty of termination shocks the conscience, especially since the termination of petitioner's tenancy was based on her own conduct" (*id.*).

As in *Matter of Smith*, and unlike the cases relied upon by the majority, petitioner's intentional concealment of her earnings had a material and substantial effect on the reduction of her rent. Her payment of restitution was compelled by the prospect of imprisonment, not the willing exercise of her own free will. Finally, the loss of her tenancy is entirely attributable to her own conduct. **[Prior Case History: 2010 NY Slip Op 30763(U).]**